JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CSBN 163873)
Chief, Criminal Division

HANLEY CHEW (CSBN 189985)
Assistant United States Attorney
San Jose Division

  150 Almaden Boulevard, Suite 900
  San Jose, California 95113
  Telephone:  (408) 535-5060
  Facsimile:  (408) 535-5066
  E-mail:     Hanley.Chew@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 08-00709 JW |
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S RESPONSE TO |
| v. | ) | DEFENDANT'S SENTENCING |
| | ) | MEMORANDUM |
| ROBERT SCOTT WEST, | ) | |
| | ) | Sentencing Date: June 15, 2009 |
| | ) | Sentencing Time: 1:30 p.m. |
| Defendant. | ) | Before: The Honorable James Ware |
| | ) | |

## I.    INTRODUCTION

On or about October 9, 2008, an information was filed against defendant Robert Scott

West ("defendant"), charging him with one count of possession of stolen trade secrets, in

violation of 18 U.S.C. § 1832(a)(3).  On or about March 9, 2009, defendant pled guilty to the one

count information.

The Probation Office and parties are all in agreement concerning the sentencing guideline

calculations in this case.  Defendant's base offense level is 6 (pursuant to U.S.S.C. §

2B1.1(a)(2)) and a 8-enhancement for the amount of loss (pursuant to U.S.S.G. §

2B1.1(b)(1)(E)) which is greater than $70,000 but less than $120,000 (Presentence Report ("PSR") ¶¶ 22-23) should be applicable.   With the 2-level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(B), defendant's final adjusted offense level is 12 (PSR ¶¶ 27-31).  Defendant has no criminal history points and is in Criminal History Category I (PSR ¶ 35).  Based on the defendant's criminal history, defendant's applicable sentencing guideline range to be 10 to 16 months (PSR ¶ 59).

In addition, the government has recognized that defendant's offer to cooperate to account for all the copies of the confidential information that he illegally downloaded and copied and his paying full restitution to the victim does warrant a two-month variance to his applicable sentencing guideline range for extraordinary acceptance of responsibility.  Accordingly, the government respectfully requested that the Court find that defendant's sentencing guideline range is 8 to 14 months and sentence defendant to an 8-month sentence - 4 months of custody and 4 months of home detention.

Defendant argues that he is entitled to an additional downward departure from this sentence on four grounds: (i) defendant's criminal conduct constituted aberrant behavior; (ii) defendant has an extraordinary family circumstances concerning his position as the ; (iii) defendant has demonstrated extraordinary acceptance of responsibility; and (iv) defendant is a deportable alien.

Defendant's arguments are meritless.  First, defendant's criminal conduct involved a greater degree of planning and deliberation than portrayed by defendant and does not constitute aberrant conduct.  Second, defendant's family circumstances are not so extraordinary as to warrant a downward departure.  The disruption of a parental relationship is always an unfortunate possibility when a crime is committed and incarceration is involved.  Third, the government has already accounted for defendant's extraordinary acceptance of responsibility with its request for a two-month variance.   Any additional downward departure would be excessive.  Finally, defendant does not appear to be a deportable alien.  Even if defendant was a deportable alien, his status does not provide a basis for a downward departure.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.	ARGUMENT

### A.	Defendant's Criminal Conduct Does Not Constitute Aberrant Behavior.

Defendant contends that his criminal conduct constitutes aberrant behavior entitling him to a downward departure. See Defendant's Motion for Downward Departure ("Def. Mot.") at 2-4. Defendant portrays his downloading of confidential and proprietary information from his former employer, Phillips Lumileds Lighting Company ("Phillips") and his subsequent use of that information as limited in scope and duration. See id. Defendant argues that, only the night before he resigned, he downloaded those Phillips' files that he had created. See id. at 4. Defendant also argues that he kept this information as a reference tool and only sporadically viewed it. See id. Defendant states that he did not intend to harm Phillips. See id. Defendant's depiction of his conduct is not accurate.

Section 5K2.20 states that a court may depart downward "only if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20. The Ninth Circuit has held that: "Prior to departing downward for aberrant behavior under §5K.2.20, a sentencing court must find both that the case is extraordinary and that the behavior was aberrant under the three-prong test." United States v. Guerrero, 333 F.3d 1078, 102 (9th Cir. 2003).

Defendant's downloading and use of Phillips' confidential and proprietary information was sufficiently extensive so that it does not constitute either an extraordinary case or aberrant conduct.

First, defendant did not just happen to download Phillip's information the "night before quitting his job at Phillips." Defendant did not anticipate leaving Phillips the day after he downloaded its confidential and proprietary information. A Phillips employee discovered a letter from Bridgelux, one of Phillips' primary competitors, offering defendant a position as Bridgelux's Director of Product Development. Only after being confronted with this letter did defendant resign his position at Phillips. Defendant was escorted from Phillips the day that the letter was discovered. Had the Bridgelux letter not been discovered, defendant would have

1   likely remained at Phillips longer after he downloaded Phillips' confidential and proprietary

2   information.

3        Second, defendant did not download only those files that he had created.  Defendant

4   downloaded over 10,000 files, including not only confidential and proprietary technical

5   documents, but also financial and marketing documents upon which defendant had never

6   worked.  See PSR, ¶¶ 10-11.  These documents contained considerable information on Phillips'

7   products that had not yet been released and were still in development.

8        Third, defendant did not simply download Phillips' confidential and proprietary

9   information and leave it on his hard drive.  Defendant made multiple copies of this information.

10  In addition to several hard drives and other storage media, defendant copied this information

11  onto his personal home computer and his Bridgelux work laptop.

12       Fourth, defendant's criminal conduct was ongoing.  Defendant argues that his criminal

13  conduct only lasted a few months.  However, given that defendant had made multiple copies of

14  Phillips' confidential and proprietary information, defendant would have continued to use this

15  information had the Federal Bureau of Investigation ("FBI") not executed its search warrant of

16  his residence.

17       Finally, defendant's claim that he did not intend to harm Phillips rings hollow.

18  Defendant has already admitted that he downloaded the Phillips' confidential and proprietary

19  information to benefit himself and that his possession and use of this information would injure

20  Phillips.  See Def. Plea Agreement, ¶ 2.   This is simply a case of a highly paid senior executive

21  misappropriating confidential and proprietary information to further his career.  Therefore, there

22  is nothing extraordinary concerning defendant's conduct that would warrant a downward

23  departure for aberrant behavior.

24       **B.    Defendant's Family Circumstances Do Not Warrant A Downward
              Departure.**

25       Defendant contends that because a term of incarceration will disrupt his ability to provide

26  and for his family.  Based upon these family circumstances, defendant argues that he is entitled

27  to a downward departure.  Def. Mot. at 5-6.

28

1    The Sentencing Guidelines state that a downward departure based on family

2    responsibilities is generally a disfavored basis for a departure.  Section 5H1.6 clearly states:

3    "[F]amily ties and responsibilities are not ordinarily relevant in determining whether a departure

4    may be warranted."  U.S.S.G. § 5H1.6 (Policy Statement).  Thus, as a discouraged factor under

5    the guidelines, family ties and responsibilities generally are only the basis for a downward

6    departure in exceptional cases.  United States v. Aquirre, 214 F.3d 1122, 1127 (9th Cir. 2000);

7    United States v. Sweeting, 213 F.3d 95, 100 (3d Cir. 2000).  Ordinarily, family responsibilities

8    can be very great, and therefore, the mere fact that a defendant has a heavy burden of caring for

9    or supporting family members is not sufficiently unusual to warrant a departure.  See United

10   States v. Dyce, 91 F.3d 1462, 1466-67  (D.C. Cir. 1996).

11        In the present case, that defendant's incarceration would have an adverse effect upon his

12   family is unfortunate and regrettable.  Many criminal defendants have young children that are

13   adversely effected by imprisonment. Defendant, who was a senior executive at Phillips Lumileds

14   Lighting Company earning a substantial salary when he committed the offense conduct, should

15   have considered the consequences of his actions upon his family prior to engaging in his

16   criminal conduct.  Moreover, defendant's situation, although undoubtedly unfortunate, is not as

17   serious as cases in which a single parent is sentenced and jailed for a criminal offense.  Sadly,

18   criminal cases involving single parents are not unusual.  See United States v. Chestna, 962 F.2d

19   103 (1st Cir. 1992) (finding that the fact that defendant was single and had four small children

20   was not an "unusual family circumstance"); United States v. Mogel, 956 F.2d 1555 (11th Cir.

21   1992) (holding that a single mother with two small children was not entitled to a downward

22   departure based on extraordinary family circumstances); United States v. Headley, 923 F.2d

23   1079 (3d Cir. 1991) (holding that "imprisonment of a single parent was not extraordinary," even

24   where the women had five minor children).  Although a term of incarceration by defendant may

25   detrimentally effect defendant's family situation, defendant's wife is still available to provide

26   and care for their two children.  Thus, defendant's family circumstances are not so extraordinary

27

28

as to warrant a downward departure.[1]

## C.   Defendant Does Not Appear To Be A Deportable Alien.

Defendant contends that he is entitled to a downward departure because of his status as a deportable alien.  Def. Mot. at 6-7.  In particular, defendant notes that as a deportable alien, he would be denied the ability to be housed in a minimum security facility or a community confinement center.  See id. at 7.  Defendant argues that the consequences of deportation would be unduly harsh and severe upon him and that the best way to avoid these consequences is to sentence him to a non-custodial sentence.  See id. at 6-7.

Defendant's contentions are meritless.  Defendant does not appear to be a deportable alien.  Title 18, United States Code, Section 1227(a)(2)(A) states that:

> Any alien who - (I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable.

The Ninth Circuit has held that the "date of admission" for the purposes of the removal statute refers to the date of first lawful entry to the United States upon inspection and authorization by an immigration officer, and not the adjustment of status to legal permanent resident.  See Shivaraman v. Ashcroft, 360 F.3d 1142, 1148-49 (9th Cir. 2004).  In Shivaramn, the plaintiff lawfully entered the United States on a student visa in 1989, adjusted his status to a lawful permanent resident in 1997 and was convicted of a crime of moral turpitude for which he received a seven month sentence in 2000.  See id. at 1143-44.  An immigration judge found that plaintiff was removable based on his criminal conviction which the judge concluded occurred within five years of plaintiff's date of admission and ordered plaintiff to be deported.  See id. at 1144.  The judge held that the date of admission was plaintiff's adjustment of status date in 2000.  See id.  The Ninth Circuit found that the plaintiff was not deportable and vacated the order of

---

[1]Defendant also contends that a term of imprisonment would have a detrimental effect upon defendant's ability to secure and maintain future employment.  However, it is just as likely that defendant's felony conviction would have as great, if not a greater, impact upon his ability to secure employment than any term of imprisonment that this Court might impose.

1    deportation, holding that the plaintiff's date of admission was in 1989 and that his conviction

2    occurred outside of the five period for deportability.  See id. at 1149.

3           In the present case, defendant entered the United States in July 1999 on an H-1B visa.

4    See PSR, ¶ 40.  Defendant adjusted his status to permanent legal resident in June 2007.  See id.

5    at § 41.  For purposes of whether defendant is removable under 18 U.S.C. 1227(a)(2)(A),

6    defendant's date of admission into the United States is July 1999.  The date of defendant's

7    conviction will be June 2009, which is more than five years after his date of admission into the

8    United States.  Therefore, defendant does not appear to be a deportable alien.

9           Even if the defendant were a deportable alien, his status would not entitle him to a

10   downward departure.  District courts have the discretion to depart downward because deportable

11   aliens may be unable to take advantage of the up to six months of home detention authorized by

12   18 U.S.C. § 3624.  See United States v. Charry, 91 F.3d 1342, 1344 (9th Cir. 1996).  However, a

13   downward departure may be granted on this basis only if "[the factor] is sufficient to take the

14   case out of the Guideline's heartland" and while "bearing in mind the Commission's expectation

15   that depatures based on grounds not mentioned in the Guidelines will be 'highly infrequent.'"  Id.

16   at 1345 (quotation and citation omitted).   See United States v. Davoudi, 172 F.3d 1130, 1133-34

17   (9th Cir. 1999).  Moreover, although it has recognized that increased severity in the conditions of

18   confinement for a deportable alien may be a ground for a downward departure, the Eighth

19   Circuit has held that this fact alone "is not sufficient to make his case atypical or unusual."

20   United States v. Lopez-Salas, 266 F.3d 842, 849-50 (8th Cir. 2001).  In the present case,

21   defendant does not provide any facts that suggest his case is different than that of other

22   deportable aliens who are similarly ineligible for placement in a minimum security facility or

23   community confinement center and whose families also suffer from the unfortunate hardships of

24   separation and deportation.

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**D.      The Government's Downward Variance Request Has Accounted For Defendant's Extraordinary Conduct**.

Despite the government's request for a two-month downward variance from defendant's sentencing guideline range, defendant argues that he is entitled to an additional downward departure based on his post-offense conduct.  Def. Mot. at 8-9.  Defendant argues that he immediately confessed his crime when the FBI searched his home and then paid full restitution to Phillips a year later.  See id.  In addition, defendant notes that, although Phillips brought an action against defendant, the case did not "go far" before defendant paid Phillips the "full amount it claimed."  Id.

Because the Sentencing Guidelines already provide an adjustment for an adjustment for acceptance of responsibility under Section 3E1.1, for an "extraordinary acceptance of responsibility" departure to be permissible, the conduct must be "substantially greater than that contemplated by the Commission when drafting section 3E1.1."  United States v. Miller, 991 F.2d 552, 553 (9th Cir. 1993), overruled on other grounds, United States v. Aguirre, 214 F.3d 1122, 1127 (9th Cir. 2000).  See also United States v. Brown, 985 F.2d 478, 481 (9th Cir. 1993) (finding that the "mere existence of Section 3E1.1 does not preclude the sentencing court from making an additional departure in the case where the defendant manifests an extraordinary acceptance of responsibility.").

Defendant overstates the degree to which his conduct constitutes extraordinary acceptance of responsibility.  When the FBI searched defendant's residence, he did not immediately confess.  Instead, defendant initially denied downloading any of Phillips' confidential and proprietary information and stated that he had only downloaded personal information.  See PSR, ¶ 13.  Only later in the interview did defendant admit to downloading Phillips' confidential information.  See id.  In addition, Phillips brought suit against defendant on or about February 20, 2008.  The case proceeded for close to a year before resolving.  Only after several months of intense negotiation did the parties settle on a $100,000 payment made by defendant on February 2, 2009.  As part of the settlement, defendant agreed to meet with Phillips representative and the government to locate all the copies of the Phillips' confidential and

proprietary information that defendant had made.  On May 3, 2009, defendant met with Phillips representatives and the government to review his offense conduct and compile a list of all possible locations for the Phillips information that he had downloaded and copied.  Defendant did not provide any new information but did confirm much of what the FBI had suspected. Based upon this meeting and defendant's having paid full restitution as a result of his settlement with Phillips, the government requested that the Court grant a two-month downward variance. This variance sufficiently accounts for defendant's post-offense conduct.  Accordingly, the Court should defendant's request for an additional downward departure based on extraordinary acceptance of responsibility.

### III.    CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court find that defendant's final adjusted offense level is 12 and his criminal history category is I, grant the government's request for a 2-month variance and sentence defendant to a term of 8 months - 4 months imprisonment and 4 months home detention.

Dated: June 11, 2009                                 JOSEPH P. RUSSONIELLO
                                                     United States Attorney


                                                     /s/ Hanley Chew
                                                     HANLEY CHEW
                                                     Assistant United States Attorney